## APPEAL OF MASON MACHINE WORKS CO.

Docket No. 289.　Submitted November 17, 1924.　Decided February 15, 1926.

> Taxpayer entered into a contract with a customer for the manufacture of certain engines which proved unsuccessful and the manufacture of which was discontinued in 1917. Although not affiliated, the taxpayer and its customer were closely associated corporations. At the close of 1916 the taxpayer charged off its books a large part of the indebtedness of its customer. During 1918 the possibility of recovering any substantial amounts from the assets of the customer disappeared, but the taxpayer continued to make repairs and supply repair parts to the engines previously manufactured. The taxpayer charged off a further portion but not all of the indebtedness as of the close of 1918. *Held*, that the debt was ascertained to be worthless in 1918, and that the taxpayer may take, as a deduction for a debt ascertained to be worthless and charged off in the taxable year, all that portion of the debt charged off at the close of 1918, but may not take the remaining portion of the debt not charged off as at the close of 1918.

*R. C. Shelley, Esq.*, for the taxpayer.
*W. Frank Gibbs, Esq.*, for the Commissioner.

### Before IVINS, KORNER, and MARQUETTE.

The taxpayer appeals from the determination of a deficiency in income and profits taxes for the year 1918 in the amount of $72,625.94. The sole question at issue is whether the taxpayer should be allowed a deduction of all or any part of an alleged debt, asserted by the taxpayer to have been ascertained to be worthless and to have been charged off within the taxable year 1918.

#### FINDINGS OF FACT.

The taxpayer is a Massachusetts corporation, with its principal office at Taunton.

In or about the beginning of the year 1914 there was organized a corporation, the Jager Engine Co. by name, with its principal office also at Taunton, which was conducted in close association with the taxpayer.

During the taxable year 1918 the stock of the taxpayer, in a total amount of 10,000 shares, was held as follows:

|  | Shares. |
|---|---:|
| Frederick Mason | 4,787 |
| Harriett Clenson | 4,781 |
| William H. Bent | 422 |
| A. Bent | 5 |
| A. R. Shark | 5 |
| Total | 10,000 |

During the taxable year, until October 15, the stock of the Jager Engine Co. was owned and held, in a total amount of 850 shares, as follows:

|  | Shares. |
|---|---:|
| Mason Machine Works Co | 598 |
| Charles J. Jager | 125 |
| Charles S. Day | 125 |
| Cleveland & Bent | 1 |
| William Davenport | 1 |
| Total | 850 |

From October 15 to the close of the taxable year the stock of the Jager Engine Co. was owned and held as follows:

|  | Shares. |
|---|---:|
| Frederick Mason | 300 |
| Harriett Clenson | 298 |
| Charles J. Jager | 125 |
| Charles S. Day | 125 |
| Cleveland & Bent | 1 |
| William Davenport | 1 |
| Total | 850 |

Prior to May 6, 1914, the taxpayer opened an account upon its books in the name of the Jager Engine Co. and made charges thereto in a total amount of $82,358.02; one on January 1, 1914, of $1,761.44, and one on April 30, 1914, of $80,596.58. Credits to this account were made during the year 1914 in the amounts of $25,400 on April 9, and of $1,823.13 and $2,187.50 on April 31 [30]. On April 14 and May 13 the account was credited with $5,000 and $55,000, respectively, on account of capital stock issued to the taxpayer, and thereafter lesser credits were made to the account, so that at the close of the year the total credits amounted to $93,945.21.

On May 6, 1914, the taxpayer entered into a written contract with the Jager Engine Co. whereby the taxpayer agreed to manufacture

and sell to the Jager Engine Co. certain types of gasoline engines and parts thereof, in such quantities as the business of the Jager Engine Co. might require. When contractual relations began between these two corporations in 1914, the specifications called for the manufacture of a certain type of engine known as the "Jager Engine." This type of engine proved to be defective and inefficient. Another pattern was made, and in February, 1915, there commenced the manufacture of the "Mason Jager Engine," which manufacture continued up to March, 1917, but this type proved to be as unsatisfactory to the trade as the first type, so that at that time the manufacture of engines ceased altogether.

In pursuance of the terms of said contract the taxpayer began the manufacture of said engines and delivery thereof to the Jager Engine Co., but, after it had incurred large expenses for labor and material, it was discovered that the product did not prove to be practical, and in due time large numbers of engines were returned from the customers of the Jager Engine Co., due to the faulty and imperfect design. This condition had a twofold demoralizing effect upon the finances of both parties to the contract; first, because it impaired the ability of the Jager Engine Co. to pay for the product already manufactured and delivered, and second, because of the fact that additional sums of money were required to be expended for labor and material by the taxpayer in reconditioning, repairing, and experimenting, thus adding to the Jager Engine Co.'s debt without assisting it in its ability to make the payments stipulated in the contract. By the close of 1916 the open account on the books of the taxpayer with the Jager Engine Co. showed a net balance charged to that company, including the charges above set forth and all charges for work done in conformity to the contract of May 6, 1914, in a total amount of $241,673.18. This amount was balanced and carried forward as of January 1, 1917, but after the account was ruled off and forwarded by a journal entry made as of December 30, 1916, the taxpayer charged to profit and loss and credited to the account an amount of $162,843.18, and deducted the said amount as a debt ascertained to be worthless in its income-tax return for the year 1916.

The taxpayer ceased manufacturing engines under its contract with the Jager Engine Co. in the early part of 1917.

The Jager Engine Co. still held out the hope that it would be able to sell its drawings, patterns, patents, and whatever inventory it had, en bloc to some other engineering concern, and would thereby realize some funds with which to pay at least part of its indebtedness to the taxpayer. Officers of the Jager Engine Co. began a search for a purchaser of its entire assets, and on April 24, 1917, an option was given to one F. K. Lord whereby he was granted an option to pur-

chase the assets of the concern at an agreed price of $44,250. During 1917 Lord paid the sum of $6,000 in cash, of which $4,500 was paid to the taxpayer and credited by it to the account of the Jager Engine Co., but, after many extensions of time had been requested and granted, Lord defaulted under his option on January 10, 1918, and it then became certain that the Jager Engine Co. was hopelessly insolvent and that the taxpayer could never recover the debt then due, or any material part thereof.

During the taxable year 1917 the taxpayer carried on repair work on machines already made and sold by the Jager Engine Co., and charged that company therefor, and on December 31, 1917, the books of the taxpayer showed a balance due from the Jager Engine Co., after credit for the above amount of $162,843.18 written off, of $92,302.48, which amount was carried forward as the balance on January 1, 1918.

During the taxable year 1918 further minor charges were made to the account and two minor items of debits were made thereto, so that as of December 31, 1918, the account showed a balance of $93,313.46, which amount was forwarded as of January 1, 1919. Against the said amount there was credited by journal entry as of December 31, 1918, but after the account was ruled off and forwarded, an amount of $76,000, and this amount the taxpayer claimed as a deduction in its original return for the year 1918 on account of a debt ascertained to be worthless and written off during the taxable year. On October 15, 1918, Frederick Mason and Harriett Clenson caused to be transferred to themselves the stock of the Jager Engine Co. theretofore owned by the taxpayer. It appears that theretofore the stock of the Jager Engine Co. owned by the taxpayer was charged off the books.

The balance of $17,313.46 was thereafter increased by minor charges and decreased by minor credits, and was ultimately written off the books in the years 1920, 1921, and 1923. All the contract work for the construction of engines was completed some time in 1917, and, on account of the intimate knowledge of the affairs of the Jager Engine Co.—since the books of account and most of its assets were kept on the premises of the taxpayer and in custody of its employees; from the knowledge of its past experiences in trying to put these engines in satisfactory condition so as to meet the demands of the market; and from its thorough knowledge of the nature, character, and amount of the assets of the Jager Engine Co.—and realizing that nothing of value to the taxpayer could be recovered by legal action, it was ascertained by the taxpayer in 1918 that the account was worthless.

On December 30, 1921, the stockholders of the Jager Engine Co., in a special meeting, resolved to accept a claim of Charles J. Jager

and C. S. Day for services in the sum of $6,300 and to sell to them for that amount the "inventory" of the company; to acknowledge the debt of the Jager Engine Co. to the taxpayer and to dissolve the Jager Engine Co. The "inventory" so sold to Jager and Day had no market value, but was turned over in this manner to them in satisfaction of claims which they could not otherwise have collected.

The Commissioner, in auditing the taxpayer's income-tax return for 1916, disallowed the deduction of $162,843.18 claimed upon the ground that the debt had not then been ascertained to be worthless. In auditing the taxpayer's 1918 return he disallowed the deduction of $76,000 written off on account of the debt for the same reason. This disallowance, with other adjustments, resulted in the determination of a deficiency for 1918 of $72,625.94, from which this appeal was taken.

### DECISION.

The deficiency should be determined in accordance with the following opinion. Final determination will be settled on 15 days' notice, under Rule 50.

### OPINION.

JAMES: At the end of 1916 the Jager Engine Co. stood charged on the books of the taxpayer with an open account in the amount of $241,673.18, and as of the close of that year, but after the ruling down of the account, the taxpayer charged off $162,843.18 thereof, leaving a balance of $78,830. In the same manner at the end of 1918 the taxpayer's balance against the Jager Engine Co., including the above item of $78,830, was $93,313.46, of which $76,000 was charged off as of the close of 1918 but after the books had been ruled off and the balances forwarded. The taxpayer claims that it is entitled to deduct, under section 234 (a) (5) of the Revenue Act of 1918, the total amount of $256,156.64, representing a debt ascertained to be worthless and charged off within the taxable year 1918, within the meaning of that subdivision, and made up of the item of $162,-843.18 charged off in 1917 as of the close of 1916, $76,000 charged off in 1919 as of the close of 1918, and the balance of the account, amounting to $17,313.46. The actual balance of the account on December 31, 1918, was $93,313.46, after deducting the above-mentioned charge-off of $162,843.18.

The Commissioner claims that the entire amount should be written off as of December 31, 1921, and not as of December 31, 1916, when taxpayer charged off $162,843.18, or as of December 31, 1918, when taxpayer charged off $76,000. We are clear that the debt was not deductible in 1916, since in that year it had not been ascertained to be worthless. We are of the opinion that the debt was ascertained

to be worthless as of December 31, 1918, and, if the taxpayer has otherwise complied with the requirements of the statute, it is entitled to the deduction in that year. The total account as of the close of that year was, as stated above, $93,313.46, and $162,843.18 had theretofore been charged off, so that the total account as of that date was $256,156.64. In making the book entries thus outlined the taxpayer was following the proper business course, since it was apparent at the close of 1916 that it could not recover all of the account, and it was clear at the close of 1918 that it would never recover any substantial portion of the entire amount.

Not until 1921 did the Income Tax Acts permit deductions for debts ascertained to be worthless in part. The Revenue Act of 1918 allows as deductions "Debts ascertained to be worthless and charged off within the taxable year." The language is unambiguous and unmistakably requires compliance with both conditions before a deduction may be allowed for the purpose of computing net income subject to taxation. As to $17,313.46 of the amount claimed by the taxpayer, we are therefore of the opinion that the statute bars the deduction for the simple reason that that amount at least the taxpayer did not "charge off within the taxable year." It chose deliberately to carry forward this balance for reasons satisfactory to itself, even though as of the close of 1918 the worthlessness of the account had been ascertained.

But we think the fact that the taxpayer charged off $76,000 after closing the books, putting it as the first entry in 1919, does not affect its right to make the deduction in 1918. The entry dated December 31 was the first entry made after the ruling down of the accounts, and in our opinion substantially complies with the requirement that the amount be charged off within the taxable year. This language must be interpreted in the light of the ordinary course of business practice. It is not the physical act done within the year to which Congress has referred, but to the setting up of evidence of the ascertainment of worthlessness substantially as of the date of such ascertainment and in confirmation thereof. The amount of $76,000, we believe, is clearly deductible.

The taxpayer prior to 1918 had charged off $162,843.18, and claimed this amount as a deduction in its return for 1916. The Commissioner very properly disallowed the deduction for that year. For purposes of income-tax accounting, therefore, this amount is to be regarded not as having been charged off by the taxpayer but rather as having been charged to a reserve. In writing the account down to $17,313.46 at the close of 1918 by the entry of $76,000, the taxpayer in effect consolidated with the last-mentioned amount the amount of $162,843.18 theretofore charged out of the

account. If the taxpayer had credited surplus and debited the Jager Engine Co.'s account with $162,843.18, and had immediately credited this amount and debited surplus with $238,843.18, it would have complied literally with the requirement that the account be "charged off within the taxable year"; yet such an entry would have been wholly meaningless as a matter of bookkeeping and would have been an entry which only could have been put upon the books for purely income-tax purposes, and would have reflected no fact of any significance whatever. The significant fact is that all of the account which then stood upon the books, except $17,313.46, was charged off as of the close of 1918. We are of the opinion that the taxpayer is entitled to a deduction in 1918 of $238,843.18.